[No. 1933]

## HENRY C. NICHOLSON, APPELLANT, *v.* H. A. COMINS, RESPONDENT.

1. ELECTIONS—PRIMARY ELECTIONS—CANVASSING BALLOTS—IRREGU-
   LARITY.

   Mere irregularity of the election officers in canvassing the ballots at a place other than the polling place will be disregarded under primary election law (Stats. 1909, c. 198), section 1 providing that the law shall be liberally construed so that the will of the electors shall not be defeated by any informality or failure to comply with its provisions in respect to conducting the election or certifying its result.

APPEAL from the District Court of the Ninth Judicial District of the State of Nevada, White Pine County; *Thos. L. Mitchell,* Judge.

Primary election contest by Henry C. Nicholson against H. A. Comins. From an order dismissing the contest, contestant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Anthony Jurich* and *Samuel Belford,* for Appellant.

*Chandler & Quayle,* for Respondent.

*Per Curiam:*

At the primary election held on the 6th day of September, 1910, the above-named appellant and respondent were opposing candidates for the Republican nomination for the office of county commissioner of White Pine County for the long term. From the canvass of the returns by the board of county commissioners, it appeared that the respondent, Comins, received 290 votes and that the appellant, Nicholson, received 285 votes. The board of county commissioners directed that a certificate of nomination be issued to the said H. A. Comins as the nominee of the Republican party for the office mentioned. Within five days after the canvass of such vote, the said appellant, Nicholson, filed in the District Court of the Ninth Judicial District in and for White Pine County an affidavit and complaint, under the provisions of sections 29

and 30 of the act relating to primary elections (Stats. 1909, p. 273), contesting the nomination of the said Comins to said office. The proceedings came on regularly to be heard before said court, Hon. Thomas L. Mitchell, district judge, presiding, and judgment was entered in favor of defendant Comins.

The only question upon the merits relates to the right of the respondent, Comins, to have counted the votes of Preston election precinct in said county, in which precinct ten votes were cast for Comins and two votes for Nicholson. The appellant contends that the entire vote of this precinct should be excluded because of certain irregularities upon the part of the election officers of said precinct. The matter was heard below upon an agreed statement of facts, and it is upon those facts that the appellant seeks a reversal of the judgment. The schoolhouse in Preston precinct had been duly fixed as the polling place for such precinct. The other necessary facts to be considered in a determination of the merits of this case are the following: "That the board of election of said Preston voting precinct, duly closed the polls at 6 o'clock p. m. on the 6th day of September, A. D. 1910, at the Preston schoolhouse, and thereupon had their supper brought to them at said polling place. That when the said board had finished their suppers, and were ready to proceed with the counting of the ballots that had been cast at said election they were approached by a committee of the young men of the precinct, who then and there inquired of them whether or not they would go elsewhere to count the ballots, in order that they, the young people, might have the said schoolhouse to hold a dance in that evening. That said election board thereupon examined the election laws to ascertain whether they could legally repair to another place to count the ballots, and in their judgment, finding nothing therein to prevent their so doing, and desiring not to arbitrarily stand in the way of the enjoyment of the young people, they thereupon locked the ballot box, with all the votes that had been cast contained therein,

and, taking said ballot box and the poll book, official register, and other election supplies, they then and there repaired to the house of Daniel Nicholas, situate about three blocks from the said schoolhouse. Before departing, they announced, without any formality, however, to the said committee, and to the bystanders, that they were going to the house of said Nicholas to count the ballots, and no other announcement was made. That the house of said Daniel Nicholas is regarded by the people of the district as a sort of public resort, said Nicholas being unmarried and having no family, and possessing a large number of books, periodicals, and other reading matter, and many of the people of Preston are accustomed in the evening, on Sundays, and on holiday occasions to assemble at the home of said Nicholas to talk over matters of common interest and to read. That, upon arriving at the house of said Nicholas, the said board unlocked the ballot box and began forthwith to count the ballots therein contained. That the doors of the house of the said Nicholas were left open during the whole time that the count was going on, and bystanders and electors of said precinct, as well as the said constable, were present during all of the time said count was going on, and until after the result of the election in said precinct was duly declared, and said board did not at any time prevent any one from being present at the count or keep anyone out of the room in which the count was proceeding, but permitted all who desired so to do to witness the same; and said count was at all times conducted in an open, public manner, in the presence of bystanders as aforesaid, until the same was completed and the result duly declared. * * * It is further agreed that the said board of election received the votes, retained possession of the ballot box, and other election supplies and equipment, correctly and accurately canvassed the votes cast at said election, and in all other respects complied with the legal requirements in connection therewith, saving and excepting the single claimed violation of the election laws in the way of adjourning from said schoolhouse to said residence of said Nicholas

as aforesaid for the purpose of counting the said votes. It is further agreed that the said adjournment was made by said board of election in good faith, and, if such amounted to any violation or infraction of the election laws, that such violation was so made by said board under a *bona fide* mistaken belief as to what the election law requirements were." It appears from the foregoing that there was no actual fraud committed by the election officers of said precinct, but, upon the contrary, it is agreed that the votes of said precinct were "correctly and accurately canvassed."

Counsel for appellant has cited a number of cases holding that the removal of the ballot box and the canvass of the ballots at some place other than that designated as the polling place was a sufficient cause to reject the entire vote of the precinct. All of these cases relate to general elections. We need not, we think, determine what would have been the effect of the action of the election officers of the Preston precinct had this been a general election. Section 1 of the act relating to primary elections among other things provides: "This statute shall be liberally construed so that the real will of the electors shall not be defeated by any informality or failure to comply with all provisions of law in respect to either the giving of any notice or the conducting of the primary election or certifying the results thereof."

If we were to hold with counsel for the appellant, the real will of the Republican electors of White Pine County would, we think, be defeated, for it is admitted that the result would have been the same had the election officers canvassed the vote at the place designated by the board of county commissioners for the holding of the election. We think it was the intention of the legislature by this paragraph of the primary election law to make a more liberal rule in determining questions relating to the regularity of primary elections than those recognized as essential to preserve the integrity of general elections. Where it is conceded, as in this case, by the parties to the controversy that the irregularity upon the part of the elec-

tion officers did not as a matter of fact work any injury whatever to the contestant, we are bound to hold under the rule laid down in the statute and the agreed facts that the returns of the precinct in question ought not to be rejected.

It is unnecessary to determine other questions raised including those of jurisdiction, as the result to the parties in interest would be the same, however they might be determined.

The order appealed from dismissing the contest is affirmed.